IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUKAS NAKOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:25-CV-0985-D |
| VS. | § | |
| | § | |
| UNITED STATES CITIZENSHIP | § | |
| AND IMMIGRATION SERVICES, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Lukas Nakos ("Nakos") seeks judicial review of the denial by U.S.

Citizenship and Immigration Services ("USCIS") of his Form I-140 Immigrant Petition for

Alien Workers as an alien of "extraordinary ability."  On cross-motions for summary

judgment, the court grants USCIS's motion, denies Nakos' motion, and enters judgment

dismissing this action with prejudice.

I

Nakos, a citizen of the United Kingdom, is a businessman who purports to be a leader

in the field of business as it relates to property investment and development.  In January 2025

Nakos filed with USCIS a Form I-140 Immigrant Petition for Alien Workers ("Petition"),

asserting entitlement to preferential treatment in visa issuance as an alien of "extraordinary

ability."

USCIS issued a Request for Evidence ("RFE") seeking additional documentation to

support the Petition, with which Nakos complied, and then denied the Petition.  After the

denial, Nakos sought judicial review of USCIS's decision in this court. USCIS later reopened proceedings on the Petition. After another RFE, to which Nakos responded, USCIS again denied the Petition. Nakos seeks judicial review of the denial of his Petition and moves for summary judgment. USCIS cross-moves for summary judgment. The court has heard oral argument on the motions.

## II

"The general 'genuine dispute of material fact' standard for summary judgment does not apply to claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706." *Gadhave v. Thompson*, 2023 WL 6931334, at *1 (N.D. Tex. Oct. 19, 2023) (Fitzwater, J.) (citing *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F.Supp.2d 1077, 1084 (E.D. Cal. 2011)). Instead, when "a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Redeemed Christian Church of God v. USCIS*, 331 F.Supp.3d 684, 694 (S.D. Tex. 2018) (Rosenthal, C.J.) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). In this context, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (quoting *Stuttering Found. of Am. v. Springer*, 498 F.Supp.2d 203, 207 (D.D.C. 2007)).

Under the APA, an agency decision may be reversed by the district court if the plaintiff shows that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Nat'l Hand Tool*

- 2 -

*Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989).  An agency acts arbitrarily and capriciously if it

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Brown v. Napolitano*, 391 Fed. Appx. 346, 349 (5th Cir. 2010) (per curiam) (quoting *Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998)).  "A decision is not arbitrary or capricious if the agency considers the relevant factors and 'articulates a rational relationship between the facts found and the choice made.'"  *Willingham v. Dep't of Labor*, 475 F.Supp.2d 607, 612 (N.D. Tex. 2007) (Robinson, J.) (quoting *State of La. ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988)).

### III

The Immigration and Nationality Act ("INA") requires that USCIS give priority in employment-based visas to certain classes of people.  *See* 8 U.S.C. § 1153(b).  One such visa is the First Preference EB-1 visa, "colloquially dubbed the 'Einstein' or 'genius' visa." *Amin v. Mayorkas*, 24 F.4th 383, 386-87 (5th Cir. 2022).  An EB-1 visa is granted only when

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation, (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A).

The INA's enabling regulation defines "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). "This narrow definition reflects the stringency of the 'extraordinary ability' standard. After all, a different visa is available to those whose ability is merely 'exceptional.'" *Amin*, 24 F.4th at 387 (quoting 8 U.S.C. § 1153(b)(2)). As a result, even highly accomplished individuals often fail to win the "extraordinary ability" designation. *See, e.g.*, *Kazarian v. USCIS*, 596 F.3d 1115, 1120-22 (9th Cir. 2010). "A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). Sustained acclaim and recognition may be proved by evidence that the alien (1) received a one-time, major, international recognized award or (2) meets at least three of ten criteria. *Id.*

USCIS's consideration of an EB-1 petition is a two-step process. At the first step, "the agency assesses whether the applicant submitted the required initial evidence listed in the regulation by a preponderance of the evidence." *Amin*, 24 F.4th at 388 (internal quotation

- 4 -

marks omitted).  "The 'preponderance of the evidence' standard requires that the evidence demonstrate that the applicant's claim is 'probably true' . . . ." *Matter of Chawathe*, 25 I.&N. Dec. 369, 376 (USCIS AAO 2010).  If USCIS can articulate a material doubt as to the truth, denial of the petition is appropriate.  *See id.*

Even if USCIS determines that the applicant's evidence meets at least three criteria under the first step, the inquiry is not at an end because "[t]he regulation does not say that meeting the regulatory criteria presumptively qualifies an applicant for a visa."  *Amin*, 24 F.4th at 391.  Rather, USCIS proceeds to the inquiry's second step, conducting "a 'final merits determination' to determine whether, as a whole, the evidence is sufficient to demonstrate that the applicant meets the 'required high level of expertise.'"  *Id.* at 388.  At this step, USCIS "consider[s] whether the record establishe[s] [the applicant's] sustained acclaim and status at the top of his field."  *Id.* at 389.

IV

The court first addresses Nakos' contention that USCIS acted arbitrarily and capriciously in its final denial of his Petition because USCIS had reached different conclusions in its first decision regarding whether Nakos satisfied certain regulatory criteria. The court disagrees.

As then-Chief Judge Godbey has explained:

> [the applicant's] first EB-1 petition is not at issue in this case. And the Court will not review action taken by USCIS regarding his second EB-1 petition prior to its issuance of the [second] denial. Courts are empowered to review only final agency action, not preliminary steps taken by USCIS.  *See Bennett v.*

> *Spear*, 520 U.S. 154, 177-78 (1997) (stating final agency action is the "consummation of the agency's decisionmaking process" from which "legal consequences will flow"). USCIS may correct what it perceives to be errors and perform a new examination of a petition, "even in cases where the new decision reverses a previously favorable decision." *Arbor Home, LLC v. Mayorkas*, 604 F.Supp.3d 878, 885 (N.D. Cal. 2022), *aff'd*, 2023 WL 4819647 (9th Cir. 2023) (unpub.) (collecting cases); *see also Shah v. Chertoff*, 2007 WL 2948362, at *10 (N.D. Tex. 2007) (finding USCIS may deny an extension to a visa based on a reassessment of qualifications even though the applicant previously received the visa). Here, USCIS's voluntary reopening of [the applicant's] petition and subsequent issuance a new denial "effectively nullified" all earlier denials. *See Arbor Home*, 604 F.Supp.3d at 885.

*Aravamuthan v. Jaddou*, 2025 WL 1708126, at *9 (N.D. Tex. June 17, 2025) (Godbey, C.J.).

Accordingly, the only agency action that the court will review is the final denial of Nakos' Petition. *See id.* ("[T]he Court will not scrutinize the step-one analysis that USCIS conducted in the earlier decisions or compare it to USCIS's analysis in the [final] denial.").

V

The court now considers Nakos' contention that he meets at least five of the ten step-one criteria.

A

Nakos maintains that he satisfies the following criteria: (1) "[d]ocumentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor" (the "Award Criterion"); (2) "[p]ublished material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought" (the "Publication Criterion"); (3)

- 6 -

"[e]vidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field" (the "Contribution Criterion"); (4) "[e]vidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation" (the "Leadership Criterion"); and (5) "[e]vidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field" (the "Salary Criterion"). 8 C.F.R. § 204.5(h)(3).

In its decision, USCIS acknowledged that Nakos satisfied one of these criteria—the Salary Criterion—but maintained that the evidence Nakos submitted was insufficient to establish that he satisfied the Award Criterion, the Publication Criterion, the Contribution Criterion, and the Leadership Criterion. Nakos contends that USCIS acted arbitrarily and capriciously in reaching this determination.

B

The court turns first to the Award Criterion. As noted above, this criterion requires "[d]ocumentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor." 8 C.F.R. § 204.5(h)(3)(i). According to USCIS's policy manual, "[n]othing precludes the [applicant] from relying on a team award, provided the person is one of the recipients of the award." U.S. Citizenship & Immigr. Servs., Dep't of Homeland Sec., Policy Manual, vol. 6, pt. F, ch. 2, sec. (B)(1) ("Policy Manual"). The Policy Manual provides the examples of a "musical group who receive an award" and "relay team members who appear together on the medal podium." *Id.*

at vol. 6, pt. F, ch. 2, sec. (B)(1) n.21.  Nakos contends that USCIS failed to properly consider the team awards he submitted and ignored evidence of the license he received from the government of Antigua and Barbados.

Nakos failed to demonstrate that USCIS's decision was arbitrary and capricious. USCIS did not fail to properly consider Nakos' team awards.  USCIS determined that Nakos' proposed field of endeavor was "CEO in the field of business, as it relates to property investment and development."  R. (ECF No. 28-1) 2 (internal quotation marks omitted).  It found that "the evidence of record fails to show . . . that [the awards] were issued to [Nakos] for his excellence as a CEO in the field of business." *Id.* at 5.  While USCIS may consider team awards, this does not eliminate the requirement that the awards be received *for* excellence in the field of endeavor.  8 C.F.R. § 204.5(h)(3)(i).  To say, for instance, that the Artisan Real Estate Investor team's receipt of the Regeneration Project of the Year award was *for* Nakos' excellence as a CEO in the field of business is like saying that a music group's receipt of a best album award was *for* the lead singer's excellence as a lead singer in the field of music, or a relay team's receipt of a gold medal was *for* the anchor's excellence as an anchor in the field of track.  As with the lead singer or the anchor, Nakos' receipt of the team awards plausibly suggest his excellence as a CEO in the field of business. But it was not unreasonable in this context for USCIS to conclude that Nakos did not receive these awards *for* excellence in his proposed field of endeavor.  *See Gadhave*, 2023 WL 6931334, at *6 ("USCIS's decision on this criterion is not 'so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Brown*, 391

- 8 -

Fed. Appx. at 933)).[1]

USCIS also determined that the awards did not have sufficient national or international recognition. It explained that there was an absence of evidence indicating the number of entrants who competed in the same category or their level of experience. *Id.* Because these details were lacking, USCIS could have had "material doubt" as to whether the awards had sufficient national or international recognition to meet the preponderance of the evidence standard. *See Gadhave*, 2023 WL 6931334, at *5 (quoting *Matter of Chawathe*, 25 I.&N. at 376); *see also* Policy Manual, at vol. 6, pt. F, ch. 2, sec. (B)(1) (noting that "national or international recognition is most often associated with awards given to individuals at the highest level in a given field").

Moreover, Nakos' contention that USCIS ignored his receipt of the government license from Antigua and Barbados is unavailing. "[T]here is no requirement that USCIS must have specifically addressed every document that [Nakos] submitted for a court to find

---

[1]Nakos contends that USCIS failed to consider his alternative argument that, even if the awards that he submitted were conferred on the company rather than on him personally, the Policy Manual suggests that failure to credit company awards to a company's founder and CEO is arbitrary and capricious. This contention is unavailing for multiple reasons. First, USCIS need not "expressly parse or refute on the record each individual argument . . . offered by the petitioner." *Gadhave*, 2023 WL 6931334, at *2 (quoting *Wang v. Bd. of Immigr. Appeals*, 437 F.3d 270, 275 (2d Cir. 2006)). Second, irrespective of whom the awards were conferred on, USCIS reasonably determined that these awards were not issued to Nakos for excellence in his proposed field of endeavor. Third, Nakos' reliance on the Policy Manual is misplaced. In the context of the Award Criterion, the Policy Manual provides that "the regulation indicates that the focus should be on the person's receipt of the awards or prizes, *as opposed to the employer's receipt of the awards or prizes*." Policy Manual, at vol. 6, pt. F, ch. 2, sec. (B)(1) (emphasis added).

that USCIS engaged in reasoned decisionmaking." *Aravamuthan*, 2025 WL 1708126, at \*5 (citing *Gadhave v*, 2023 WL 6931334, at \*5). At the outset of its decision, USCIS noted that it reviewed "all of the supporting evidence," and within the context of this criterion, USCIS specifically identified "[d]ocuments issued by the government of Antigua and [Barbados]" as evidence that Nakos had submitted. R. (ECF No. 28-1) 2, 5. The court concludes that USCIS did not fail to consider "outcome-determinative information." *See Chivukula v. Allen*, 2023 WL 4504601, at \*6 (N.D. Tex. May 1, 2023) (Scholer, J.); *see also Jama v. Wilkinson*, 990 F.3d 1109, 1118 (8th Cir. 2021) (concluding that agency did not fail to consider relevant evidence "as indicated by the references to the record within the [agency's] decision").

C

The court considers next the Publication Criterion. This criterion requires the applicant to submit documentation of "[p]ublished material about [him] in professional or major trade publications or other major media, relating to [his] work in the field for which classification is sought." 8 C.F.R. § 204.5(h)(3)(iii). "Such evidence shall include the title, date, and author of the material, and any necessary translation." *Id.* "The publication must focus on [his] work, must have significant national distribution, and must be in the predominant language of the country where it is published." *Denisov v. Wiemann*, 2006 WL 8437057, at \*3 (N.D. Tex. Aug. 15, 2006) (Godbey, J.). USCIS determined that the articles Nakos submitted for this criterion failed to include the name of the author or did not focus on Nakos or his work. Nakos contends that USCIS applied an overly restrictive

- 10 -

interpretation of the regulations and failed to analyze numerous documents he submitted.

USCIS's decision as to the Publication Criterion was not arbitrary and capricious. USCIS permissibly determined that, of the articles submitted, only a subset identified the author, as required by the regulations. Nakos' contention that identifying the *publisher* of a submitted material satisfies the requirement that the evidence includes the *author* of the material is inconsistent with the regulation's plain language. *See* 8 C.F.R. § 204.5(h)(3)(iii) ("Such evidence shall include the title, date, and *author of the material*, and any necessary translation." (emphasis added)); *see also Javakhadze v. Mayorkas*, 2023 WL 8037730, at *6-7 (N.D. Tex. Nov. 20, 2023) (Brown, J.) (affirming USCIS where "two of the articles [applicant] submitted fail[ed] to identify an author"); *S.D. v. Hood*, 391 F.3d 581, 595 (5th Cir. 2004) ("We have consistently held that a regulation should be construed to give effect to the natural and plain meaning of its words."). And Nakos' reliance on the fact that the Policy Manual identifies transcripts of audio or video coverage as qualifying media that may satisfy the Publication Criterion is misplaced. While his contention that transcripts often do not have authors has some intuitive appeal, there is no basis in the regulations or caselaw to give the word "author" the broader reading that Nakos proposes.[2]

Next, USCIS analyzed two of the articles that included author names and reasonably

---

[2]Nakos submitted two transcripts of interviews in which he participated. It is notable that both transcripts contain a written introduction, providing context for or summarizing the interviews. Given that someone must have authored the introductions, it is not as absurd as Nakos suggests to read the regulation to require that he identify an author for these documents, who may very well be the same person who prepared the transcript.

concluded that these articles did not focus on Nakos or his individual work in the field. It explained that the *Biz Community* article only mentioned Nakos in passing, and that the *Financial Mail* article was not about his work in the field of endeavor. The fact that a photo of Nakos was included in both articles and that the articles discussed the work of a company that could be attributable to him fails to establish that USCIS's determination was unreasonable. *See Joseph v. Dir. of Tex. Serv. Ctr., U.S. Citizenship & Immigr. Servs.*, 2025 WL 458001, at *3 (5th Cir. Feb. 11, 2025) (per curiam) (concluding that it was reasonable for USCIS to determine that articles failed to meet the Publication Criterion where "USCIS reasoned that quoting a company's leader in an article about the work of the company does not make the article about the leader, here [the applicant]"); *Gadhave*, 2023 WL 6931334, at *3 ("It is not enough that the material merely 'relate[s] to the [applicant]'s work' or that the applicant is pictured or mentioned in the publication." (alterations in original) (quoting *Kinuthia v. Rosenberg*, 2018 WL 1243955, at *5 (D. Mass. Mar. 8, 2018)). Moreover, Nakos maintains that USCIS failed to analyze the other articles that included author names. But far from not addressing these articles, USCIS explained that while it "reference[d] only two articles, [it] has reviewed and considered each one." R. (ECF No. 28-1)10 n.4.[3]

Nakos also contends that USCIS failed to provide sufficient analysis for the three

---

[3]Nakos contends that *Gadhave* requires an "article-specific analysis." P. Resp. (ECF No. 33) 12. In *Gadhave* the court noted with approval that USCIS had stated why it found each article the applicant submitted to be insufficient. *See Gadhave*, 2023 WL 6931334, at *4. But the court did not purport to establish a rule requiring USCIS to conduct an article-specific analysis. To the contrary, *Gadhave* explained that there is "no requirement" that USCIS "specifically address every document" that an applicant submits. *Id.* at *5.

articles he submitted from Wikipedia and the United Kingdom government press releases. But USCIS need not "write an exegesis on every contention." *Liu v. Mayorkas*, 2021 WL 5578672, at *7 (D.D.C. Nov. 30, 2021) (quoting *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010)). Moreover, when USCIS identified the subset of articles that included an author name, these three articles were not listed. It reasonably follows, then, that USCIS considered this defect to apply to these three articles. *See Visinscaia v. Beers*, 4 F.Supp.3d 126, 130 (D.D.C. 2013) (explaining that an agency's decision may be upheld if its "path may reasonably be discerned").

D

The court turns next to the Contribution Criterion. This criterion requires the applicant to provide "[e]vidence of [his] original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field." 8 C.F.R. § 204.5(h)(3)(v). In support of this criterion, Nakos submitted letters and articles. USCIS determined that the evidence failed to show that Nakos' contribution was original. Nakos maintains that USCIS mischaracterized his contribution and failed to properly consider his evidence.

USCIS did not mischaracterize Nakos' contribution. Nakos maintains that USCIS mischaracterized his contribution when it stated that "the evidence fails to show that [Nakos] was the first or one of the first ones to have listed his organization on the [Johannesburg Stock Exchange]." P. Br. (ECF No. 50) 32 (quoting R. (ECF No. 28-1) 12-13). "Accurately stated," Nakos explains, "the [contribution] was unique because it combined the secondary listing of a foreign-registered company with a primary listing on another stock exchange."

- 13 -

*Id.* at 33.  But this description of his contribution is consistent with how USCIS described Nakos' contribution elsewhere.  *See* R. (ECF No. 28-1) 12 ("[N]o information or objective documentary evidence was submitted to show that the self-petitioner was the first individual to be able to list his company in two different stock exchanges . . . .").  While it appears that USCIS was imprecise at times, this imprecision does mean that its decision on the Contribution Criterion was arbitrary and capricious.  *Cf. Amin*, 24 F.4th at 393 ("Our task is merely to ask whether the agency considered the relevant facts and articulated a satisfactory explanation for its decision . . . .").

USCIS likewise did not fail to properly consider Nakos' evidence.  The decision quotes from various letters and one of the articles Nakos submitted.  For example, while the *Levy* letter purported to highlight the original nature of the dual-listing's structure, USCIS quoted a portion of the letter that noted that, with his contribution, Nakos had "gained membership into an exclusive group of CEOs" to lead their company to multiple stock exchange listings in the same year.  R. (ECF No. 28-1) 12 (emphasis omitted).  In view of this portion of letter, USCIS could have had material doubt as to the originality of Nakos' contribution.  Moreover, USCIS was within its discretion to discount the letters for lack of objective documentary evidence that Nakos' contribution was original.  *See MRC Energy Co. v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 1209188, at *8 (N.D. Tex. Mar. 31, 2021) (Kinkeade, J.) ("[L]egal authority confirms the discretion USCIS has in according weight, if any, to expert opinion letters."); *see also Bhanu v. Garland*, 2023 WL 6119357, at *8 (E.D. Pa. Sept. 18, 2023) (upholding USCIS decision requiring objective evidence in addition to

letters of support); Policy Manual, at vol. 6, pt. F, ch. 2, sec. (B)(1) (noting that letters may provide valuable context for evaluating claimed original contributions, "particularly when the record includes documentation corroborating the claimed significance"). The articles that Nakos contends supply documentary evidence do not discuss whether his contribution was original. Accordingly, USCIS's determination on this criterion was not arbitrary and capricious.[4]

E

Finally, the court considers the Leadership Criterion. This criterion requires that an applicant present evidence that he "has performed in a leading or critical role for organizations or establishments that have a distinguished reputation." 8 C.F.R. 204.5(h)(3)(viii). To satisfy this criterion, Nakos submitted evidence regarding his roles at (1) MAS PLC, (2) Artisan Real Estate Investors, and (3) MMDA. USCIS determined, in part, that the record failed to show that MAS PLC and Artisan Real Estate Investors had a distinguished reputation. Nakos contends that USCIS ignored evidence and failed to properly evaluate his evidence.

USCIS's decision was not arbitrary or capricious. USCIS discussed the relevant elements necessary to satisfy this criterion and does not appear to have relied on factors that Congress did not intend USCIS to consider. USCIS also clearly identified the evidence that

---

[4]Because USCIS did not err in finding that Nakos failed to show that the contribution was original, the court need not address the part of USCIS's analysis addressing the significance of his contribution.

Nakos submitted for this criterion, quoted portions of some, discussed others, and determined that the record did not show that the organizations had a distinguished reputation. *See Gadhave*, 2023 WL 6931334, at *5 (concluding that USCIS's decision on a criterion was not arbitrary and capricious where it did not specifically address every document submitted, but "clearly named the types of documents [the applicant] submitted," "listed the elements necessary to satisfy the criterion's plain language," and "quoted from several of the individual submitted documents"); *Tapia v. Jaddou*, 2025 WL 2780815, at *5 (M.D. Fla. Sept. 30, 2025) ("USCIS must provide a decision that shows it reviewed the evidence presented and thought about the relevant factors."). What Nakos is essentially asking this court to do is "reconsider evidence that USCIS properly found insufficient." *Sun v. Jaddou*, 2025 WL 1556944, at *5 (N.D. Tex. June 2, 2025) (Brown, J.); *see also Amin*, 24 F.4th at 393 ("[The court] cannot substitute [its] judgement for the agency's."). Moreover, the court again finds unavailing Nakos' contention that USCIS ignored evidence regarding MMDA and the government license from Antigua and Barbados. In assessing whether Nakos satisfied this criterion, USCIS clearly identified the government license, and it did not need to "provide written findings about every piece of evidence that it consider[ed]." *Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022).[5] Accordingly, this "reasoned decisionmaking process . . . [satisfies] the lenient arbitrary-and-capricious standard

---

[5]And any potential error on this point would be harmless because Nakos' evidence does not show that MMDA had a distinguished reputation. *See Amin*, 24 F.4th at 394 (relying on similar reasoning to conclude that any potential error was harmless).

of review." *Visinscaia*, 4 F.Supp.3d at 135.

VI

The court now addresses whether USCIS erred in concluding that Nakos did not demonstrate that he had risen to the top of his field and sustained national or international acclaim. Although USCIS determined that Nakos only met one of the step-one criteria, it proceeded to the final merits determination. The "second step is the ultimate statutory inquiry of whether the applicant has 'extraordinary ability' as 'demonstrated by sustained national or international acclaim.'" *Amin*, 24 F.4th at 395 (quoting 8 U.S.C. § 1153(b)(1)(A)). "Extraordinary ability is such an elite level of accomplishment that recognizing it necessarily entails a judgment call." *Id.* at 394-95. And "[a]rguing that the agency was compelled to find extraordinary ability is a bit like saying that the only possible grade on an exam was an A+." *Id.* at 395.

USCIS reasonably determined that Nakos did not meet this stringent standard. USCIS applied the correct standard, considered the totality of the evidence, and reached the familiar conclusion that Nakos had not shown "sustained national or international acclaim" in the field or that "he is one of the small percentage who has risen to the very top of the field of endeavor." R. (ECF No. 28-1) 22. Moreover, USCIS did not impose a novel evidentiary requirement when it stated that the "record lacks sufficient information about other [CEOs] in [Nakos'] field and his place in the field relative to them." R. (ECF No. 28-1) 22. Nakos' principal citation for his contention that USCIS imposed a novel evidentiary requirement is the Policy Manual. But the Policy Manual explains that "the petitioner must provide

sufficient context" for the evidence submitted. Policy Manual, at vol. 6, pt. F, ch. 2, sec. (B)(2); *see also Bhanu*, 2023 WL 6119357, at \*9 (affirming USCIS's final merits determination where applicant did not show "how his publications compare to others who are viewed to be at the very top of their field"). Nakos fails to adequately explain how, in noting the absence of helpful contextual evidence, USCIS imposed a novel evidentiary requirement.[6]

Accordingly, USCIS's decision "reflects the reasoned consideration the APA requires." *Amin v*, 24 F.4th at 395.[7]

---

[6]At oral argument, the parties also addressed whether any alleged error USCIS committed at step one tainted the final merits determination. The court has determined that there was no error at step one. But even assuming that USCIS did err at step one, any error would likely be harmless because USCIS did not err at step two. *See Nagaiah v. Allen*, 784 F.Supp.3d 798, 819 (E.D. Pa. 2025) ("Unless [the applicant] can show that the USCIS erred at step two, the final merits determination, the error he complains about at step one is harmless."); *Aravamuthan*, 2025 WL 1708126, at \*8 (concluding that any evidentiary error USCIS might have made at step one was harmless because USCIS's step two decision was valid). As already discussed, USCIS properly considered Nakos' evidence and concluded that it was insufficient to meet the final merits determination's stringent standard. Therefore, even if USCIS erred at step one, "these errors would have had no bearing on either the procedure used or the substance of [the] decision reached, and any remand to force USCIS to rectify its evidentiary errors would be of no substantive or procedural benefit to [Nakos], and would provide [him] with little more than a revised decision reaching the same conclusion[.]" *Chivukula*, 2023 WL 4504601, at \*9 (third alteration in original) (internal quotation marks omitted) (citations omitted).

[7]In light of the reasoning set out in the court's decision, it need not address USCIS's contention that Nakos failed to provide evidence of his intent to continue working in his field of endeavor.

* * *

For the reasons explained, the court grants USCIS's cross-motion for summary judgment, denies Nakos' motion for summary judgment, and enters judgment dismissing this action with prejudice.

**SO ORDERED**.

July 15, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 19 -